IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET O'SHEA, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. 07-1881 |
| v. : | |
| : | |
| DIRECT FINANCIAL SOLUTIONS, LLC, : | |
| d/b/a CASH CENTRAL, : | |
|     Defendant. : | |

Tucker, J.                                                                           December 5, 2007

**MEMORANDUM AND ORDER**

      Presently before this Court Defendant Direct Financial Solutions, LLC's ("DFS") Motion to Compel Arbitration (Doc. 5), and Plaintiff's Response in Opposition to the Motion to Compel Arbitration (Doc. 9). For the reasons set forth below the Court will grant Defendant's Motion.

**BACKGROUND**

      Defendant DFS is a Utah limited liability company, and Defendants Dunkley and Workman are residents of Utah. On April 10, 2007, Plaintiff Margaret O'Shea filed a Class Action Complaint in the Court of Common Pleas of Philadelphia County, alleging illegal, unfair and deceptive business practices by Defendants in violation of the Pennsylvania Usury Law, 41 P.S. § 101, the Consumer Discount Company Act, 7 P.S. §6201 ("CDCA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. §201-1, the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. §2270.1; and on the basis of contractual unconscionability. Defendants filed a Notice of Removal with this Court on May 9, 2007, asserting diversity of citizenship under 28 U.S.C. § 1332.

      Plaintiff alleges that Defendants negotiate or make short-term loans of less than $25,000 with interest rates that greatly exceed the ceilings allowed under the Pennsylvania usury and small loan laws. These "payday loans," so-named because they generally become due on the borrower's next

payday, are allegedly obtained by consumers through DFS's websites or call centers. Plaintiff purports to represent a class of Pennsylvania citizens who have obtained payday loans through DFS during the past five years.

Plaintiff alleges that: (1) Defendants advertise their loans in Pennsylvania; (2) the loan contracts are executed in Pennsylvania to Pennsylvania resident consumers; and (3) consumers receive loan funds in Pennsylvania and make their loan payments in Pennsylvania. Plaintiff further alleges Defendants prey on economically vulnerable customers by encouraging them to "refinance" payday loans, thus promoting repeat and chronic borrowing, and ensnaring customers into long-term indebtedness. Since Defendants were not licensed under the CDCA, Plaintiff claims that Defendants were entitled to charge interest rates of no higher than 6% APR, the rate set by the Pennsylvania Usury Law. Plaintiff alleges Defendants charged excessively high interest rates on the payday loans, ranging from 466% to 2,098% APR. Additionally, Plaintiff alleges procedural and substantive unconscionability and requests a declaratory judgments holding the loan contracts void, unenforceable and unconscionable; and granting injunctive relief, monetary damages, disgorgement of interest payments, costs, and attorneys fees.

## LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides:

> A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Under the FAA, in order to determine if there is an enforceable arbitration agreement between the parties that compels arbitration and a stay or dismissal of the present action, a court must consider: (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the

specific dispute falls within the substance and scope of that agreement. Trippe Manufacturing. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (citations omitted). If it is determined that an arbitration agreement exists and that the dispute falls within the scope of the agreement, the FAA requires the court to refer the matter to arbitration proceedings. 9 U.S.C.A. § 3. The federal policy encouraging recourse to arbitration requires federal courts to first look toward the relevant state law of contracts in deciding whether an arbitration agreement is valid under the FAA. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Applying the relevant state contract law, a court may . . . hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense such as unconscionability. Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004) (quoting Alexander v. Anthony Intern., L.P., 341 F.3d 256, 264 (3d Cir. 2003)). Courts should interpret arbitration clauses liberally. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")

Generally applicable contract defenses may be applied to invalidate arbitration agreements. Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999). A party challenging a contract provision as unconscionable generally bears the burden of proving that the provision is procedurally and substantively unconscionable. Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 265 (applying Pennsylvania law). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." Id. (citing Harris, 183 F.3d at 181.) Substantive unconscionability refers to terms that unreasonably favor one party to which the disfavored party does not truly assent. Id. Where a challenge is to the validity of a contract as a whole rather than specifically to the arbitration clause

within it, the dispute must be resolved by the arbitrator, not the court. Buckeye Check Cashing, Inc. v. Cardegna, et al., 126 S. Ct. 1204. 1209 (2006).

The Third Circuit has repeatedly held that inequality in bargaining power, alone, is not a valid basis upon which to invalidate an arbitration agreement. Harris v. Green Tree Fin. Corp., 183 F.3d at 183 (3d Cir. 1999). The right to proceed as a class is merely procedural, and may be waived by agreeing to an arbitration clause. Johnson v. West Suburban Bank, 225 F.3d 366, 369 (3d Cir. 2000).

In an arbitration agreement, a generic choice-of-law clause, standing alone, does not infer that the parties intend to opt out of the FAA's default standards. Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 289 (3d Cir. 2001).

## DISCUSSION

Between September 27, 2006, and March 28, 2007, DFS issued eight separate loans to Plaintiff. Each Consumer Loan Agreement contains separate Arbitration and Waiver of Jury Trial Agreements (the "Arbitration Agreements.") Under the Arbitration Agreements, any disputes related to the loan must be resolved solely through arbitration, borrowers waive their rights to file a lawsuit, have a jury trial, or participate in a class action suit, and the arbitrator's decision regarding any dispute is final and binding. The Arbitration Agreements are expressly governed by Utah arbitration law.

DFS argues that arbitration is required based on the plain, unambiguous language of the Arbitration Agreements, and that Plaintiff's contractual and statutory claims clearly fall within the terms of the Arbitration Agreements. Plaintiff claims that the Arbitration Agreements are invalid because they are procedurally and substantively unconscionable. According to Plaintiff,

the Arbitration Agreements are procedurally unconscionable because the loan contracts are essentially adhesion contracts, and borrowers lack the bargaining power to negotiate the terms. Plaintiff claims the Arbitration Agreements are substantively unconscionable because the Agreements are effectively exculpatory clauses that insulate DFS from legal accountability and deny class members access to appropriate legal remedies.

### A. Jurisdictional Burden

The Arbitration Agreements are valid under Pennsylvania law, because: (1) the parties entered into an agreement to arbitrate, as evidenced by the signed loan agreements; and (2) Plaintiff's claims fall within the scope of the Arbitration Agreements, which state that "all federal and state law claims" and "all common law claims, based upon contract, tort, fraud, or other intentional torts" are subject to arbitration under the Agreements.  Thus, the only matter to be decided is whether the Arbitration Agreements are unconscionable and therefore invalid.

Although Pennsylvania law allows a court to set aside an arbitration provision where the provision is procedurally and substantively unconscionable, Plaintiff has failed to substantiate her claims of unconscionability.  Plaintiff relies heavily on Lytle v. CitiFinancial Services, 810 A.2d 643 (Pa. Super. 2002) to argue that the Arbitration Agreements are inherently unconscionable because they are contracts of adhesion.  However, Plaintiff fails to further substantiate this claim with an effective showing of either procedural or substantive unconscionability.  Moreover, as the Lytle court stated that "a finding that a contract is one of adhesion does not require that the court find the contract unconscionable."  Lytle, 810 A.2d at 658.

### B. Procedural Unconscionability

Plaintiff has made no persuasive showing of procedural unconscionability. She has not argued that the arbitration agreements were in extremely fine print, in confusing language or hidden in the document. Instead, Plaintiff's entire argument for procedural unconscionability focuses on borrowers' lack of bargaining power and choice as to the arbitration clause. Plaintiff effectively attacks the contract as a whole rather than specifically demonstrating that the arbitration clause is procedurally unconscionable. The dispute must therefore be resolved by an arbitrator.

### C. Substantive Unconscionability

Plaintiff has not persuasively demonstrated substantive unconscionability. Plaintiff's argument that the arbitration agreement is unconscionable because the borrower is limited to arbitration whereas DFS retains its right to civil court in case of default is unpersuasive. Mutuality is not a requirement of a valid arbitration clause. Harris, 183 F.3d at 180. In Harris, the Court of Appeals for Third Circuit held that it was of no legal consequence that an arbitration clause gave one party the option to litigate arbitrable issues, while requiring the other party to invoke arbitration. Id. Lack of mutuality therefore does not invalidate the arbitration agreement, so long as the contract is supported by sufficient consideration. Id.

This finding also addresses to Plaintiff's argument that the arbitration agreement lacks "meaningful choice" and is therefore substantively unconscionable. Harris found that the issue of meaningful choice overlaps the issue of mutuality, and that inequality in bargaining power does not automatically invalidate an arbitration agreement. Id. at 183.

Plaintiff's reliance on Bragg v. Linden Research, Inc., 487 F. Supp. 2d 593 (E.D. Pa.

2007), in which an arbitration provision on a website was held to be procedurally and substantively unconscionable, is misguided.  Plaintiff notes that the payday loan agreements, like the contract in Bragg, were electronically signed.  However, Bragg applies California law to decide the issue of unconscionability, and therefore the standard is inapplicable to this case.  Whereas under California law, one-sided results may demonstrate substantive unconscionability, in Pennsylvania, as discussed previously, lack of mutuality does not invalidate an arbitration agreement.

The FAA controls the Arbitration Agreements, since the FAA as a valid federal law preempts any state law purporting to regulate the same issue.  Roadway, 257 F.3d at 294.  A generic choice-of-law clause in an arbitration agreement is not evidence of inconsistency with FAA standards.  Id.

Plaintiff's argument that the Agreements' ban on class action suits is contrary to public policy is also unpersuasive.  Where the Arbitration Agreements expressly waive Plaintiff's right to proceed as a class, the Court should "enforce the parties' arbitration as they wrote it."  Champ v. Siegel Trading Company, Inc., 55 F.3d 269, 275 (7th Cir. 1995)).

Finally, Plaintiff's argument that approximately $300 is a "nominal" amount for damages and would not be pursued by individual borrowers, is questionable.  While it is true that Pennsylvania courts have not enforced class action waivers where the amounts were extremely small, the estimated damages in the instant matter are substantially greater than those amounts which have precluded  Pennsylvania courts from enforcing such waivers.  See, e.g., Thibodeau v. Comcast Corp., 912 A.2d 874 (Pa. Super. Ct. 2006) (class members alleged they were overcharged $9.60 per month), McNulty v. H & R Block, 843 A.2d 1267, 1268 (Pa. Super. 2004)

(class members would be entitled to a $50 award) (citing Szetela v. Discover Bank, 118 Cal. Rptr. 862 (2002) (class member entitled to a $29 award)).  Moreover, the Arbitration Agreements state that DFS will advance Plaintiff's arbitration fees, and that regardless of the outcome of the arbitration, Plaintiff will not be responsible for reimbursing DFS the arbitration fees.

A party who agrees to arbitrate, but then asserts that his or her statutory claim cannot be vindicated in an arbitral forum, faces a heavy burden.  Johnson v. West Suburban Bank, 225 F.3d 366 (3d Cir. 2000).  Plaintiff has failed to meet that burden.

## **CONCLUSION**

For the reasons stated above, the Court grants DFS's Motion to Compel Arbitration.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET O'SHEA, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. 07-1881 |
| v. | : | |
| | : | |
| DIRECT FINANCIAL SOLUTIONS, LLC, | : | |
| d/b/a CASH CENTRAL, | : | |
|     Defendant. | : | |

## ORDER

**AND NOW**, this ___ day of December, 2007, upon consideration Defendant Direct Financial Solutions, LLC's ("DFS") Motion to Compel Arbitration (Doc. 5), and Plaintiff's Response in Opposition to the Motion to Compel Arbitration (Doc. 9), **IT IS HEREBY ORDERED and DECREED** that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4) is **DISMISSED WITHOUT PREJUDICE.**[1]

2. Defendant's Motion to Compel Arbitration (Doc. 5) is **GRANTED**.

3. Defendants' Motions for Leave to File a Reply (Docs. 10&11) are **DENIED**.

                                                        **BY THE COURT:**

                                                        **/s/ Petrese B. Tucker**
                                                        _____
                                                        **Hon. Petrese B. Tucker, U.S.D.J.**

---

[1] By letters dated November 29, 2007 and November 30, 2007, the parties have indicated their agreement that, after review of the jurisdictional discovery, the parties will enter stipulations of dismissal as to the two individual Defendants.

9